McKinney, J.,
delivered the opinion of the Court.
The defendant was presented by the grand jury, at *484 the February Term, 1857, of the Circuit Court of Knox, for the offense of illegal voting.
The facts of the case are, that at the election for electors of President and Vice-President of the United States, in November, 1856, the defendant cast his vote, not then being a legally qualified voter, according to the constitution and laws of Tennessee, as is alleged. The disqualification of the defendant, to vote in said election, upon which the prosecution is founded is, that being an alien born, he was not naturalized six months next preceding the day of said election; his naturalization and admission as a citizen of the United States, having taken place within that period of time.
On the motion of the defendant, the presentment was quashed by his Honor, the Circuit Judge; and the case comes to this Court by an appeal in error, on behalf of the State.
The solution of the question, whether or not the defendant was a “ qualified voter,” depends upon the construction to be given to the first section of the fourth article of the amended constitution of 1834, which is as follows: “ Every free white man of the age of twenty-one years, being a citizen of the United States, and a citizen of the county wherein he may offer his vote, six months next preceding- the day of election, shall be entitled to vote for members of the General Assembly, and other civil officers for the county or district in which he resides.”
For the defendant it is argued, that by the proper construction of this section, all that is requisite to constitute a person of foreign birth a qualified voter, is simply that, in the first place, he shall be a citizen of *485 the United States at the time of offering his Yote, regardless of the time when he may have been naturalized, whether on the day before the election, or six months before; that the words, “ being a citizen of the United States,” import nothing more than that he shall be a citizen at the time he proposes to vote. And, in the next place, that he shall have had his fixed residence in the county in which he may offer his vote, the length of time prescribed. That in the, phrase, “ citizen of the county,” the term citizen was used, not in its technical or strictly appropriate sense; but, as the strongest, and perhaps most apt word that could have been chosen to express the idea supposed to have been in the mind of the author of the section, namely — a fixed, permanent domicil, or place of abode. These two requirements, it is insisted, are all that is made necessary to entitle a naturalized citizen to exercise the privilege of voting.
On the other hand, it is contended by the counsel for the prosecution, that a naturalized citizen is not legally qualified to vote until after a probation of at least six months from the time of his naturalization; in other words, that he must not only have resided in the county wherein he may offer his vote, six months preceding the election, but that he must likewise, during all that period, have been invested with the attributes and character of “ a citizen of the United States,” possessing all the qualifications necessary to the exercise of the elective franchise. That the term “ citizen,” with reference to the county in which the person may reside, though subject to criticism, necessarily implies citizenship, as well as fixed residence' for the full period of six months previous to the day of election.
*486 The question is one of more difficulty than, at first view, might be supposed; and the opposite views of counsel, have been maintained with much force and ingenuity of argument.
Without perplexing ourselves with the intricacies and mazes of the argument, there is one consideration, which, we think, may serve to guide us to a correct conclusion, in the construction of this provision of the constitution.
The journal of the convention, to which we suppose it is admissible to refer, for the purpose of ascertaining the sense in which particular words or phrases may have been used in the constitution, shows, that in the draft of the section in question, as reported to the body, from the committee of the whole, the words, “an inhabitant,” were used; and, on motion, these words were struck out, and “ citizen” inserted in their stead. Now, whatever may be said in respect to the want of exact verbal propriety, in the use of the word “ citizen,” in this connexion, we must suppose that the convention meant something by it. And, in our judgment, no other conclusion can reasonably be deduced than this — that it was intended, by the change of the phraseology, to convey the meaning in the most emphatic form of expression, that no one should be entitled to exercise the privilege of voting, who had not been a member of the body politic, and likewise a permanent resident of the local division or county, .for the period of six months, immediately preceding the day of election.
The conditions of this section of the constitution cannot, in our opinion, be fulfilled upon any other construction. And this exposition is free from the imputa *487 tion of any hardship, or invidious discrimination, as regards naturalized citizens. It puts them on exactly equal footing with natural horn citizens, immigrating to this State from other States of the Union; and on the same footing, too, with our own citizens, removing from one county to another in this State; all of whom are disqualified to vote, until six months after their removal to the county in which they may have fixed their residence.
It may he remarked too, that this construction of the constitution may tend, in some degree, to check a very serious practical evil, in the judgment of all right thinking men; the mischievous struggles, in some quarters of the country, on the eve of an election, to manufacture votes for the occasion, no matter how.
It follows, that the judgment of the Circuit Court, quashing the presentment, is erroneous. It will he reversed, and the defendant will he remanded to answer the charge.